IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Ronald Brunson, | ) | C/A No.: 3:11-2013-JFA-SVH |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | REPORT AND RECOMMENDATION |
| John M. McHugh, Secretary of the Army, | ) ) ) ) | |
| Defendant. | ) ) | |

In this employment discrimination case, plaintiff Ronald Brunson ("Plaintiff") is suing John M. McHugh, Secretary of the Army, alleging gender discrimination related to his employment as a Respiratory Therapist at Moncrief Army Community Hospital ("MACH") at Fort Jackson, South Carolina. Plaintiff alleges gender discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII").

This matter comes before the court on Defendant's motion for summary judgment. [Entry #7]. Plaintiff filed a response to the motion [Entry #8], and Defendant filed a reply. [Entry #15]. On February 29, 2012, this court issued an order giving Plaintiff the opportunity to file an affidavit pursuant to Rule 56(d) identifying with specificity the alleged facts not currently supported by the evidence and whether discovery is likely to reveal evidence to support those facts. Plaintiff filed an affidavit on March 14, 2012 [Entry #26] and Defendant filed a reply to the affidavit on March 26, 2012 [Entry #31]. The motion for summary judgment having been fully briefed, it is ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Because the motion for summary judgment is dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends Defendant's motion for summary judgment be granted.

I. Factual Background

Plaintiff was hired by Tanya Studstill on January 5, 2009, as a Respiratory Therapist at MACH in a temporary position not to exceed one year. Compl. ¶ 9 [Entry #1]; [Entry #7-2 at 4]. Plaintiff's duties consisted of providing respiratory therapy and care, and particularly performing diagnostic pulmonary function tests. Tanya Studstill (female), Head Nurse over Internal Medicine in the Family Health Center, was Plaintiff's immediate supervisor. His second level supervisor was Dr. Neville Bennett (male), Chief of Internal Medicine Services, and his third level supervisor was Dr. Marianne Wile (female), Chief of Primary Care for MACH.

On July 15, 2009, "KL",[1] a female soldier in training, made a sworn statement to the Fort Jackson Criminal Investigation Division ("CID") alleging that she had been sexually assaulted during a pulmonary function test administered at MACH. [Entry #7-5]. KL alleged that Plaintiff had touched his genitals in front of her, pressed his genital area against her hips and back, and attempted to hug her. *Id.* KL initially made these

---

[1] To protect the accuser's privacy, only the initials of the alleged victims are used to identify them.

allegations against "Dr. Bennett." *Id*. at 2. However, she described "Dr. Bennett" as a short African American male with short hair and a small goatee. *Id*. at 2. According to Defendant, Dr. Bennett is a white male, and the description provided resembled Plaintiff. KL subsequently corrected her statement to state that references to Dr. Bennett should be to Plaintiff. *Id*. at 1.[2]

On August 4, 2009, Dr. Bennett, Plaintiff's second-level supervisor, presented Plaintiff with a Memorandum of Concern dated July 31, 2009. [Entry #7-8]. The Memorandum addressed the CID report made by KL. *Id*. It also referenced a complaint made by an anonymous soldier that Plaintiff was "too personal" with his patients. *Id*. The Memorandum further informed Plaintiff he should follow departmental policies and procedures related to personal contact with soldiers in training. *Id*.

Also on August 4, 2009, Plaintiff met with Studstill, his immediate supervisor regarding Dr. Bennett's Memorandum of Concern. [Entry #31-1 at 5]. Studstill wrote a Memorandum for the Record regarding her meeting with Plaintiff, but according to Plaintiff, she never provided him with a copy. [Entry #26 at 6]. Although there may be a dispute about the details of this meeting,[3] Plaintiff admits that, around this time, Studstill informed him that a chaperone should be present during examinations. [Entry #31-2 at 6–8].

---

[2] KL stated that she got the name from her test result paperwork and Plaintiff admitted that he had treated KL. [Entry #7-7].

[3] Defendant contends that Studstill told Plaintiff a "battle buddy" should be present at all times during treatment, and a chaperone should be present if direct contact is needed. Plaintiff contends there are disputes of fact regarding the Memorandum of Record, but

3

Plaintiff continued to perform his job without incident and on February 28, 2010, Plaintiff was converted to a permanent appointment as a Respiratory Therapist subject to a one-year trial period of employment. [Entry #7-10]. However, on April 9, 2010, "ZB," a female soldier in training, made a sworn statement to the Fort Jackson Military Police complaining of inappropriate conduct by Plaintiff while she was undergoing pulmonary function testing in Respiratory Therapy at MACH. [Entry #7-11]. ZB reported that Plaintiff introduced himself as "Dr. Ronald Brunson," and repeatedly grabbed his genitals and masturbated during the respiratory testing procedure. *Id*. ZB further reported that when the result of her pulmonary function test came back as consistent with asthma, Plaintiff told her that he would allow her to breathe in a water substance so that she could pass the test. *Id*. at 2. ZB also reported that Plaintiff hugged and attempted to kiss her as she was leaving the office. *Id*. at 1–2. During the office visit, Plaintiff declined the offer of a chaperone by the front desk nurse and sent ZB's battle buddy to wait downstairs in the pharmacy during testing. *Id*. at 2.

Plaintiff was then moved to an administrative position in the Uniform Business Office, pending a military police investigation. Compl. ¶ 15 [Entry #1]. Following the military police investigation regarding the April 9, 2010 allegations, Plaintiff was charged with simple assault. *Id*. However, the charges against Plaintiff were dismissed on September 21, 2010 in federal district court. *Id*.

On May 26, 2010, Ms. Studstill gave Plaintiff a memorandum entitled "Termination During Trial Period" terminating his federal employment effective June 3,

---

has not specified what in particular he disputes.

2010. *Id*. at ¶ 17. The memorandum stated that Plaintiff was being terminated for: (1) providing a false statement to a patient; (2) touching his penis in front of a patient; (3) hugging and kissing a patient; (4) failing to follow supervisory instructions; and (5) telling a patient he would allow her to breathe in a water substance so that she could pass a medical test. *Id*. Plaintiff was terminated effective June 3, 2010. [Entry #7-16].

On August 26, 2010, Plaintiff filed an EEO complaint alleging he was terminated on the basis of his gender. [Entry #7-18]. In December 2010, the Department of Defense Investigations and Resolutions Division conducted an investigation into Plaintiff's claims. [Entry #7-19]. A fact-finding conference was held at which Plaintiff and nine additional agency witnesses testified. *Id*. After consideration of all of the evidence, the investigator concluded that management articulated legitimate, credible reasons for Plaintiff's termination. *Id*. On May 13, 2011, the agency issued a Final Agency Decision concluding that Plaintiff was not the victim of intentional discrimination. [Entry #7-20]. On August 2, 2011, Plaintiff filed this action [Entry #1].

II. Discussion

    A. Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact

cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

B. Analysis

Plaintiff alleges he was discriminated against in violation of Title VII on the basis of his gender. Because Plaintiff lacks any direct evidence of gender discrimination, he proceeds on the indirect evidence burden-shifting method of proof established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). Plaintiff has the initial burden to establish a prima facie case by the preponderance of the evidence by showing that (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) his position remained open or was filled by a similarly-qualified person outside the protected class. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc). If Plaintiff establishes the prima face case, the burden then shifts to Defendant "to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.*

1. Prima Facie Case

Defendant argues Plaintiff is unable to establish his prima facie case because he

cannot demonstrate that he was performing his job duties at a level that met his employer's legitimate expectations. Specifically, Defendant sets forth the following reasons for terminating Plaintiff: (1) providing a false statement to a patient; (2) touching his penis in front of a patient; (3) hugging and kissing a patient; (4) failing to follow supervisory instructions; and (5) telling a patient he would allow her to breathe in a water substance so that she could pass a medical test. [Entry #7-16].

In support of its argument that Plaintiff was not meeting its legitimate expectations, Defendant points out that at least two female soldiers made allegations of sexual misconduct against Plaintiff, resulting in two criminal investigations, and a charge of assault being filed against him by the Fort Jackson Military Police.[4] MACH also received allegations that Plaintiff made a false statement to one of the soldiers by claiming to be a physician, and that he offered to allow ZB to breathe in a water substance so that she could pass a pulmonary function test. [Entry #7-11].

KL filed a formal complaint with the Fort Jackson CID on July 17, 2009 alleging that when Plaintiff examined her, he pressed his hands against his genital area and fondled himself, and when she left the examination room, he attempted to hug her. [Entry #7-5]. MACH had also received an anonymous complaint through its Interactive Customer Evaluation system from a reserve soldier alleging that Plaintiff was "too personal" with his patients by touching them too long and standing too close to them. [Entry #7-8].

---

[4] The assault charge was dismissed several months after Plaintiff's termination.

Plaintiff was then given a Memorandum of Concern by Dr. Bennett and counseled by Studstill. *Id*.; *see also* [Entry #31-1]. Studstill told him during this period of time, though not necessarily during the counseling session, to have a chaperone present during his examinations. [Entry #31-2 at 6–8]. On March 30, 2010, Plaintiff failed to have either a battle buddy or chaperone present during his treatment of ZB on March 30, 2010. Specifically, Plaintiff declined the offer of a chaperone by the nurse and instructed ZB's battle buddy to wait downstairs in the pharmacy during treatment. [Entry #7-11]. ZB subsequently reported to the Fort Jackson Military Police that Plaintiff had repeatedly grabbed his genitals and masturbated during testing, and hugged and attempted to kiss her as she was leaving. *Id*. In light of the multiple allegations of workplace misconduct, Plaintiff cannot demonstrate that he was performing his job satisfactorily at the time of his termination.

2. Burden-Shifting and Pretext

Even assuming, arguendo, that Plaintiff was meeting his employer's reasonable expectations, Defendant has set forth legitimate non-discriminatory reasons for his termination, including multiple reports of inappropriate behavior towards patients, as well as representing himself to a patient as a doctor, and offering to let a patient breathe in a water substance to pass a medical test. [Entry #7 at 14; Entry #15]. Therefore, the burden then shifts to Plaintiff to show that Defendant's proffered reasons are pretextual.

In response, Plaintiff alleges that Studstill had a discriminatory motive based on an allegation from another employee, Staff Sergeant Tomeka Burrows, that Studstill had made a discriminatory comment related to hiring a replacement for Plaintiff.

8

Specifically, Burrows alleges Studstill said "We want to be careful about the males because we don't want to go through the same thing we did before." [Entry #7-19 at 13]. However, to establish pretext a plaintiff must establish that defendant's explanation is unworthy of credence or false. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000). Here, Studstill's statement does not show that Defendant's proffered reasons for terminating Plaintiff were false. In fact, the statement arguably supports Defendant's assertion that Plaintiff was terminated for reports of inappropriate behavior towards female soldiers in training.[5]

Plaintiff's argument that the reports by KL and ZB were false and/or inaccurate is also unavailing. Assuming Plaintiff's version of the facts, as the court must, it is the decision-maker's perception of Plaintiff's job-performance, not the perception of the employee, that is determinative. *King v. Rumsfeld*, 328 F.3d 145, 149, 151 (4th Cir. 2003); *De Jarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (citations omitted). Additionally, the issue of pretext is whether the employer is lying; mistakes of fact are not evidence of unlawful discrimination. *Price v. Thompson*, 380 F.3d 209, 214 n. 1 (4th Cir. 2004). Plaintiff has failed to provide evidence showing that Defendant's proffered reasons were pretextual. Therefore, the undersigned recommends Defendant's motion for summary judgment be granted.

    3.    Plaintiff's Affidavit Regarding Discovery

In light of the early procedural posture of this case, Plaintiff was granted until

---

[5] The court does not minimize the impact of such a statement under certain facts. However, in the case at hand, it does not support Plaintiff's argument of pretext.

March 14, 2012 to submit a Rule 56(d) affidavit identifying with specificity the alleged facts not currently supported by evidence and whether discovery is likely to reveal evidence supporting those facts.

In the affidavit, Plaintiff submits that discovery is needed related to several issues of fact. [Entry #26]. First, Plaintiff alleges that there is a question as to the proper identity of the alleged perpetrator of inappropriate conduct. However, as discussed above, it is the employer's perception that is determinative and mistake of fact are not evidence of discrimination. *See King*, 328 F.3d at 149, 151; *Price*, 380 F.3d at 214 n. 1 (4th Cir. 2004).

Plaintiff also alleges there is "a dispute between what was said in the meeting between Studstill and Plaintiff and what was documented in the Memorandum for the Record." [Entry #26-6]. However, Plaintiff fails to specify what he disputes in the Memorandum. Regardless, the undersigned has reviewed the facts in the light most favorable to Plaintiff and has not considered the Memorandum other than to show that Studstill counseled Plainiff regarding KL's allegations. Therefore, to the extent that Plaintiff disputes facts related to the Memorandum, such facts are not material to the issues in this case.

Plaintiff also claims a dispute of fact exists regarding "whether there were ever any written policies regarding Respiratory Therapists' treatment of Soldiers in Training." [Entry #26 at 6]. Defendant counters that Plaintiff's termination was not based on failure to follow generalized policies and procedures, but was based, in part, on his failure to follow specific instructions that Studstill gave to him after the allegations of KL. [Entry

#31 at 4]. Plaintiff admits that, during the time KL's allegations were being investigated, Studstill gave him instructions to have a chaperone present. [Entry #31-1 at 6–8]. Even assuming, arguendo, that the instructions regarding having a chaperone were not ongoing instructions, Defendant has also submitted four additional non-discriminatory reasons for terminating Plaintiff. Therefore, in light of Defendant's proffer of multiple non-discriminatory reasons for terminating Plaintiff, whether Plaintiff disobeyed direct instructions or policies is not a material fact in this case.

Plaintiff also points out that during the investigation Tomeka Burrows alleges Studstill said "We want to be careful about the males because we don't want to go through the same thing we did before." [Entry #7-19 at 13]. However, Plaintiff does not specify why further discovery is necessary related to this statement.

Plaintiff also submits that discovery is required regarding the circumstances of the employment of Averil Goodwin, a male respiratory therapist. Plaintiff alleges Goodwin was terminated while Defendant asserts that he was not terminated, but was an active duty soldier. However, even if Goodwin had been terminated, Plaintiff has failed to show that such information is likely to lead to the discovery of admissible information or that it shows a dispute of material fact.

Finally, Plaintiff alleges Defendant failed to allow Plaintiff to enter into evidence the order of United State Magistrate Judge Robert L. Buchanan dismissing the charges of assault against Plaintiff. It is not clear where Plaintiff sought to enter this order into evidence. However, Plaintiff provides no reason why discovery is needed on this issue, as it does not appear that the dismissal of charges is in dispute. Additionally, the

government's failure to prove beyond a reasonable doubt that Plaintiff assaulted two women does not contradict Defendant's perception that Plaintiff behaved inappropriately towards one or more female soldiers in training.

Because it does not appear that discovery would reveal evidence demonstrating a dispute of material fact, summary judgment is not premature. Accordingly, the undersigned recommends Defendant's motion for summary judgment [Entry #7] be granted.

IT IS SO RECOMMENDED.

April 18, 2012  
Columbia, South Carolina

Shiva V. Hodges  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).